```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
EMIL HARRIS,

                        Plaintiff,
                                                        MEMORANDUM & ORDER
        – against –                                     17-CV-3968 (PKC)

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                        Defendant.
----------------------------------------------------------------x
```
PAMELA K. CHEN, United States District Judge:

Plaintiff Emil Harris ("Plaintiff"), proceeding *pro se*, brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of his claim for Disability Insurance Benefits ("DIB"). Plaintiff and Defendant have cross-moved for judgment on the pleadings. For the reasons set forth below, the Court grants Plaintiff's motion and denies Defendant's motion. The Court remands this case for further proceedings consistent with this Order.

## BACKGROUND

Plaintiff applied for Social Security benefits on February 19, 2014, alleging that he was disabled from an onset date of July 5, 2012. (Tr. 129-130.) The SSA denied Plaintiff's claim on August 6, 2014 and Plaintiff requested a hearing with an administrative law judge ("ALJ"). (Tr. 140.) On October 22, 2015, Plaintiff appeared *pro se* before ALJ Hilton Miller. (Tr. 107-128.) On October 23, 2015, Plaintiff complained of the ALJ's conduct[1] and requested another hearing. (Tr. 231.) Plaintiff appeared *pro se* at a second hearing with ALJ Miller by telephone on March 15, 2016. (Tr. 79.) In a written order dated April 15, 2016, ALJ Miller denied Plaintiff's claims. (Tr. 38.) The

---

[1] Plaintiff alleged that the ALJ "refus[ed] to consider evidence submitted just before or at the hearing", "fail[ed] to allow the applicant / me to testify or cross-examine the witnesses", and "sp[oke] to the applicant / me in an offensive or hostile manner." (Tr. 231.)

Commissioner's decision became final when the Appeals Council denied Plaintiff's request for review on April 28, 2017. (Tr. 4-10.) On July 5, 2017, Plaintiff filed the present action, seeking to reverse the ALJ's decision. Defendant filed a motion for judgment on the pleadings on March, 28, 2018 (Dkt. 13), and Plaintiff filed a cross-motion for judgment on the pleadings on June 6, 2018 (Dkt. 16).

## DISCUSSION

A district court reviewing a final decision of the Commissioner must determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). If there is substantial evidence in the record to support the Commissioner's factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted).

The Court finds that the ALJ erred on three grounds. First, the ALJ did not properly apply the treating physician rule, which states that the treating physician's opinion on the subject of medical disability is "(1) binding on the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence, because the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991). Here, the ALJ made scant reference to the opinions of Plaintiff's treating physicians, Tim Canty and Hormozan Aprin, who were in the best position to develop an informed opinion as to Plaintiff's physical condition. The findings of both doctors showed the severity of Plaintiff's disability. Dr. Canty treated Plaintiff four times in July 2014 and concluded that Plaintiff was "100% permanently disabled," diagnosing Plaintiff

2

with lumbosacral spondylosis[2], displacement of lumbar intervertebral disc without myelopathy[3], spinal stenosis of lumbar region[4], displacement of cervical intervertebral disc[5], cervical spondylosis[6], and cervical radiculitis[7]. (Tr. 382, 385.) Dr. Aprin saw Plaintiff three times between

---

[2] Lumbosacral spondylosis is "a painful degenerative spinal condition that occurs primarily as the result of aging." *What is Lumbosacral Spondylosis?*, HEALTHFULLY, https://healthfully.com/lumbosacral-spondylosis-5079593.html (last visited August 17, 2018).

[3] Displacement lumbar disc refers to "a herniated disc or disc protrusion, and occurs when part of the disc gets pushed into the spinal canal. . . . This displacement and pressing on the spine often produces symptoms of pain, numbness, tingling, weakness and difficulty with coordination." *Spinal Disc Displacement Warning Signals,* DISC SPINE INSTITUTE, https://www.discspine.com/back-stories/spinal-disc-displacement-signs/ (last visited August 17, 2018). Myelopathy refers to disease of the spinal cord, which was not present here.

[4] Spinal stenosis of the lumbar region is "a condition that describes the narrowing of the spinal canal in the lower back." Symptoms such as pain, numbness, tingling, muscle fatigue, and burning sensation can occur when "a nerve is compressed within the spinal canal due to spinal stenosis." *What is Spinal Stenosis of the Lumbar Region and How is it Treated?*, LASER SPINE INSTITUTE, https://www.laserspineinstitute.com/back_problems/spinal_stenosis/what-is-spinal-stenosis-of-the-lumbar-region-and-how-it-is-treated/ (last visited August 17, 2018). The term lumbar refers to the lower back.

[5] Displacement of cervical intervertebral disc means "herniation or protrusion of the cervical intervertebral discs between the adjacent vertebrae." *Displacement of Cervical Intervertebral Disc without Myelopathy*, EPAIN ASSIST, https://www.epainassist.com/back-pain/upper-back-pain/displacement-of-cervical-intervertebral-disc-without-myelopathy (last visited August 17, 2018).

[6] Cervical Spondylosis is commonly known as the "arthritis of the neck." The condition most often causes "pain and stiffness in the neck." *Cervical Spondylosis (Arthritis of the Neck)*, ORTHOINFO, https://orthoinfo.aaos.org/en/diseases--conditions/cervical-spondylosis-arthritis-of-the-neck (last visited August 17, 2018).

[7] Cervical Radiculitis "is a condition that involves the irritation or compression of one or more cervical spinal nerves, or nerve roots, that branch off the spinal cord in the neck area. . . . Symptoms of cervical radiculopathy often include shooting pain, tingling, numbness and muscle weakness that affect the neck, upper back, shoulders, arms, hand and/or fingers." *Guide to Cervical Radiculitis*, LASER SPINE INSTITUTE, https://www.laserspineinstitute.com/back_problems/spondylosis/radiculopathy/understanding_cervical_radiculitis/ (last visited August 17, 2018).

September 2013 and February 2014. Dr. Aprin, along with another treating physician, Dr. Alexander Gecht, stated that Plaintiff was "one hundred percent" incapable of "walking, standing, reaching, bending, pulling, lifting, squatting, kneeling, and climbing, which made him completely disabled." (Tr. 35-36.)[8] Dr. Aprin noted that Plaintiff "needs help from his wife for most of his activities of daily living including taking care of his personal hygiene." (Tr. 667.) Dr. Aprin diagnosed lumbar radiculopathy and noted that Plaintiff had muscle spasms, muscle weakness of the lower extremities, a limited range of motion in the lumbar spine, and positive MRI findings. Dr. Aprin also observed that Plaintiff had decreased sensation in his left leg and the L5 nerve root. (Tr. 666.)

The ALJ's determinations contradicted the findings of both Dr. Canty and Dr. Aprin. The ALJ determined that Plaintiff was not disabled and was capable of performing work that involved carrying 50 pounds occasionally and 25 pounds frequently, as well as standing or walking for 6 hours with normal breaks in an 8-hour workday. (Tr. 30-31.) The ALJ found that Plaintiff has "a residual functional capacity at the medium exertional level with the limitations to occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds, and occasionally balance, kneel, crouch, and squat[,] but never crawl." (Tr. 33.) The Court finds that the ALJ ignored the conclusions of Drs. Canty and Aprin, which were well-supported by the medical record. *See Shaw v. Chater*, 221 F.3d 126, 134 (2nd Cir. 2000) (finding that generally more weight is given to

---

[8] Similarly, another physician, Dr. Cary Chapman, examined Plaintiff six times in 2012 and 2013, and determined that Plaintiff was "totally temporarily disabled" and in need of arthroscopic surgery (Tr. 555.) Arthroscopy is "a surgical procedure that allows doctors to view the knee joint without making a large incision (cut) through the skin and other soft tissues." An arthroscopy may be recommended by doctors when there is "a painful condition that does not respond to nonsurgical treatment." *Knee Arthroscopy*, ORTHOINFO, https://orthoinfo.aaos.org/en/treatment/knee-arthroscopy/ (last visited August 17, 2018).

4

opinions from treating sources, considering factors such as consistency with the record as a whole and evidence in support of the opinion).

Instead of crediting the findings of Dr. Canty and Dr. Aprin, the ALJ afforded too much weight to the findings of another treating physician, Dr. Kenneth Chapman ("Dr. Chapman"). The ALJ claimed that he afforded Dr. Chapman's opinion "greater weight" because of Plaintiff's longer history of treatment. Yet, Dr. Chapman's positive findings do not align with the rest of Plaintiff's medical record. For example, Dr. Chapman previously noted Plaintiff's physical improvement even though Plaintiff consistently reported back pain levels of 8/10 or 9/10 on the pain scale. (Tr. 610, 621, 625, 630, 635, 638, 642, 644, 646, 648, 650.) Plaintiff also explained that the Department of Labor removed Plaintiff from Dr. Chapman's care because of allegations that Dr. Chapman and his physician's assistant falsified Plaintiff's improvements and medical record after Plaintiff refused spinal and hip steroid injections. (Tr. 514.) Plaintiff notes that Dr. Chapman never assisted with Plaintiff's treatment and ignored Plaintiff's requests to see him during visits. (Tr. 514.) Plaintiff states that the Department of Labor thereafter placed Plaintiff with Dr. Canty. As explained above, Dr. Canty, along with Dr. Aprin, both found that Plaintiff was permanently disabled, fully contradicting Dr. Chapman's reports that Plaintiff's condition was improving. (Tr. 34.) The Court finds that the ALJ's allocation of "little weight" to the findings of Dr. Canty and Dr. Aprin and "greater weight" to Dr. Chapman was not supported by substantial evidence and was thus erroneous. *See Mortise v. Astrue*, 713 F. Supp. 2d 111, 120 (N.D.N.Y. 2010) (finding that ALJ erred by giving "little weight" to Plaintiff's treating physician where "the record contains ample evidence" supporting the physician's opinion). Had the ALJ properly considered the evaluations of Plaintiff's treating physicians, he would have determined that Plaintiff was disabled with little residual capacity for work.

The ALJ also gave too much weight to Dr. John Axline, the non-examining physician. It is well-established that "[a] corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physicians' diagnosis." *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d. Cir. 1987). Dr. Axline never examined Plaintiff, and his determinations failed to consider Plaintiff's long medical history and reported limitations on daily activities. (Tr. 35.) For example, Dr. Axline testified that Plaintiff had no work-related limitations because of sleep apnea, even though Plaintiff specifically stated that his sleep apnea makes it difficult for him to get around. (Tr. 97.) Dr. Axline also reported that Plaintiff had normal chest examinations, but Plaintiff stated that he had difficulty breathing and problems with his lungs. (Tr. 96.) Plaintiff alleged that his cardiologist informed him that his weight was causing heart and lung problems: "[My cardiologist] says that my heart and my lungs [are] too high and that's why I got each of those medications to help to slow it down." (Tr. 98.) Finally, Dr. Axline determined that Plaintiff could lift 20 pounds frequently and 50 pounds occasionally, even though Plaintiff said he could hardly walk without a cane, go to the bathroom, or care for himself in any way. (Tr. 87-88, 94, 96.) There are glaring inconsistencies between Plaintiff's statements, which are supported by the medical record, and Dr. Axline's opinions, which are not. The Court finds that the ALJ violated the treating physician rule by affording too much weight to Dr. Axline, the non-treating and non-examining physician.

The second ground for remand is that the ALJ failed in his duty to develop the factual record and resolve significant inconsistences in the medical findings. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) ("[I]t is the rule in our circuit that the [social security] ALJ, unlike a judge in a trial, must [on behalf of all claimants] . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.") (citation omitted). In

his determination, the ALJ noted several inconsistences in the medical reports, including the differences in opinion between Dr. Chapman and Dr. Axline on the one hand, and Dr. Canty and Dr. Aprin on the other. Yet the ALJ relied on the opinion evidence of Dr. Kenneth Chapman and Dr. Axline without attempting to resolve the inconsistencies. (Tr. 35-36). Specifically, the ALJ relied on Dr. Axline's determination that Plaintiff had recovered from his knee condition and could do medium exertional work, and Dr. Chapman's finding that Plaintiff was capable of working in some capacity. However, the ALJ did not credit the findings of Dr. Aprin or Dr. Canty. As a result, the ALJ did not satisfactorily resolve the differences in opinion between the physicians or attempt to fill the gaps in the record. *Shaw* 221 F.3d at 134 ( "For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record."). If there was additional information needed to resolve Plaintiff's condition after discounting the treating physicians' opinions, then the ALJ was required to seek such evidence. *Tejada v. Apfel*, 167 F.3d 770, 774-75 (2d Cir. 1999). The ALJ's failure to develop the administrative record is particularly pronounced in light of Plaintiff's *pro se* status.

The third ground for remand is that the ALJ has a heightened duty in guiding a *pro se* claimant when the claimant waives his right to counsel. *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (stating that when a claimant properly waives his right to counsel and proceeds *pro se*, the ALJ's duties are "heightened."). An inquiry that meets this duty is one that "scrupulously and conscientiously prob[es] into, inquir[es] of, and explor[es] for all the relevant facts." *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009). When Plaintiff contested the medical findings and the vocational determination of expert Peter Manzi that Plaintiff could be a laundry worker, the ALJ failed to explore any of Plaintiff's statements. After the vocational expert determined that Plaintiff

7

would be able to work as a laundry worker, Plaintiff protested by saying, "There's no way I could stand for any six hours, much less one hour or much less 20 minutes." (Tr. 104.) Plaintiff stated that he "can't bend, stoop, sit or do any of those thing[s] . . . I can't lift ten pounds, much less 20 pounds." (Tr. 101.) Rather than probing further, the ALJ responded only by asking Plaintiff for his age and education and then proceeded to shut down the line of inquiry. (Tr. 104.) When Plaintiff brought up his physical incapacity again, the ALJ thanked Plaintiff and concluded the hearing. (Tr. 105.) The ALJ also failed to determine why certain medical reports stated that Plaintiff did not use a cane, even though Plaintiff specifically argued that those findings were false and that he relies on the cane every time he walks. (Tr. 93, 96.) Such cursory inquiry does not satisfy the ALJ's heightened duty for a claimant proceeding *pro se*. *Thibodeau v. Comm'r of Soc. Sec.*, 339 Fed. App'x 62, 63-64 (2d Cir. 2009) (remanding case because the sparse administrative record was left undeveloped when the ALJ cut short testimonies and did not help cure omissions).

## CONCLUSION

For the reasons set forth above, the Court denies Defendant's motion for judgment on the pleadings and grants Plaintiff's motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: August 17, 2018
      Brooklyn, New York